**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| DARSHAN RAMANBHAI PATEL,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM[1], Secretary, U.S. Department of Homeland Security; SAMUEL OLSON, Field Office Director, Chicago Field Office, Immigration and Customs Enforcement<br><br>Respondents. | Case No. 26-cv-02200<br><br>Judge Mary M. Rowland |

## <u>ORDER</u>

Before the Court is Petitioner Darshan Ramanbhai Patel's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the following reasons, the petition is denied.

## BACKGROUND

Petitioner is a native and citizen of India. [1] ¶ 2. Petitioner first entered the United States without inspection on or around November 7, 2024. [1] ¶ 2. Petitioner was subjected to an expedited removal order. [1] ¶ 2. Following a delay in obtaining the necessary travel documents from India, Respondents paroled Petitioner into the United States on December 16, 2024. *See* [1] ¶ 3; [4] at 1-2.[2]

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kristi Noem is to be substituted as Defendant for Secretary Markwayne Mullin.

[2] The parties originally disputed whether Petitioner left the country in between the entry of a final removal order and his parole. During a status hearing before the Court on May 5, 2026, counsel for both parties confirmed their understanding that Petitioner was held in custody during that interim period, and that Petitioner was paroled into the United States to free up bed space for other arriving aliens.

1

On April 6, 2025, Petitioner filed an asylum application (Form I-589) with U.S. Citizen and Immigration Services ("USCIS"). [1] ¶ 25. Before USCIS scheduled an asylum interview with Petitioner, USCIS issued a Notice of Dismissal of his Form I-589. [1] ¶ 5. During his parole and the pendency of his asylum application, Petitioner was not scheduled for a Credible Fear Interview ("CFI"). [1] ¶ 40.

At some point, Petitioner was placed on an ankle monitor and was instructed to report in person to an Immigration and Customs Enforcement ("ICE") facility before the end of February 2026. [1] ¶ 10. Petitioner reported an ICE facility on February 26, 2026, where ICE officers detained him. [1] ¶ 11.

On March 6, 2026, Petitioner was scheduled for and attended a CFI. [11]. Petitioner was issued a negative credible fear finding. *Id*. Petitioner requested an appeal before an Immigration Judge. *Id*. On March 18, 2026, an Immigration Judge vacated the denial of a credible fear. *Id*. On March 22, 2026, Petitioner was issued a Notice to Appear ("NTA") by the Department of Homeland Security. *Id*.

On May 5, 2026, the parties appeared before the Court. There, Respondents argued that because Petitioner has received a CFI, he is being detained under 8 U.S.C. § 1225(b)(1)(A)(ii).

## DISCUSSION

The primary issue between the parties concerns the statutory authority under which Petitioner is detained.[3] Petitioner argues that he is detained under § 1226(a),

---

[3] Respondents also argue that the Court lacks jurisdiction over this action pursuant to 8 U.S.C. § 1252(g), 1252(b)(9), and 1242(a)(2)(B)(ii). For the reasons the Court has explained in prior decisions, *e.g., Garcia Rios v. Noem*, No. 25-CV-13180, 2025 WL 3124173, at *1 (N.D. Ill. Nov. 7, 2025), the Court rejects those arguments.

which entitles a detainee to a bond hearing. Respondents contend that he is detained under § 1225(b)(2)(A), which subjects aliens to mandatory detention without opportunity for a bond hearing. *See Bakytbek Adraimov v. Brison Swearingen*, No. 26-CV-1471, 2026 WL 776463, at *1 (N.D. Ill. Mar. 19, 2026).

This Court (and the large majority of district courts around the country confronted with the issue) has previously concluded that in cases where, after failing to present for inspection at the border, an alien is present in the United States and is subsequently detained, that alien is entitled to a bond hearing in accordance with § 1226(a). *See Barco Mercado v. Francis*, 2025 WL 3295903, at *4 n.22 (S.D.N.Y. Nov. 26, 2025) (collecting citations to 350 district court decisions adopting the majority view). Courts applying this view have relied in part on the Supreme Court's decision in *Jennings v. Rodriguez*. There, the Court explained that ". . . § 1226 applies to *aliens already present* in the United States . . .". *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) (emphasis added). Conversely, 1225(b)'s mandatory detention provisions conversely apply to aliens "arriving" in the United States. *Alejandro v. Olson*, No. 1:25-CV-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025).

Petitioner argues that because he has been "present" in the United States since the date of his parole December 2024, he cannot be said to be "seeking admission," so the Court should find that § 1226(a) governs his detention.

But this issue is made more complicated by the fact that Petitioner was released on humanitarian parole. The INA provision regarding humanitarian parole states:

> The Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may

3

> prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, **but such parole of such alien shall not be regarded as an admission of the alien** and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served **the alien shall forthwith return or be returned to the custody from which he was paroled** and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A) (emphasis added) (hereinafter the "Parole Provision"). Other regulations provide that "[a]n arriving alien *remains an arriving alien even if paroled* pursuant to section 212(d)(5) of the Act, *and even after any such parole is terminated or revoked.*" 8 C.F.R. § 1001.1 (emphasis added). The regulations also provide that "parole shall be *automatically terminated* without written notice . . . at the expiration of the time for which parole was authorized[.]" 8 C.F.R. § 212.5(e)(1)(ii) (emphasis added).

Respondents have represented that, at the time Petitioner was paroled, he was detained pursuant to § 1225(b). [4] at 2. If true, a straightforward reading of the Parole Provision suggests that upon termination of his parole in December 2025, Petitioner was required to "return or be returned to" custody under § 1225(b), which requires mandatory detention. Respondents argue that that's exactly what they did on February 26, 2026.

This argument implicates what is sometimes called the "entry fiction," where an alien who is in fact present in the United States is nonetheless treated legally as if they are outside the border. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 192 (2020) (Sotomayor, J., dissenting). But the fiction is "well established and carries

4

with it constitutional implications." *Montana Vargas v. Olson*, No. 26 C 1204 (N.D. Ill. Feb. 27, 2026) (Dkt. 10.). The Supreme Court has explained that noncitizens "who arrive at ports of entry—*even those paroled elsewhere in the country for years pending removal*—are treated for due process purposes as if stopped at the border," *Thuraissigiam*, 591 U.S. at 139 (emphasis added); *see also Leng May Ma v. Barber*, 357 U.S. 185, 188–89 (1958) (alien "paroled" into the United States pending admissibility had not effected an "entry"). The Second Circuit has described the entry fiction as a "well-settled principle that Congress did not intend for parole of an alien to constitute an alien's legal entry or admission to the United States." *Ibragimov v. Gonzales*, 476 F.3d 125, 134 (2d Cir. 2007). Under this construction, "[a]lthough paroled aliens physically enter the United States for a temporary period, they nevertheless remain constructively detained at the border, i.e. legally unadmitted, while their status is being resolved by immigration officials." *Id*.

Petitioner argues that the entry fiction only implicates his *constitutional* rights and thus says nothing about which *statute* he can be detained under. [10] at 2-3. The Court agrees: the Supreme Court has described the fiction as meaning an alien physically within the boundaries of the United States but legally on the border "has only those rights regarding admission that Congress has provided by statute …. The Due Process Clause provides nothing more." *Thuraissigiam*, 591 U.S. at 140.

The problem remains for Petitioner that the rights provided to him by statute are constrained by the Parole Provision. Recall that the Parole Provision gives the Secretary of Homeland Security the discretion to "parole *into* the United States . . .

5

any alien . . . ," and when the purposes of parole have been served, "the alien shall forthwith return or [] be returned to the custody from which he was paroled . . .". 8 U.S.C. § 1182(d)(5). Petitioner argues in response that because he was physically in the United States at the time of his February 2026 detention, he was not "seeking admission" nor "arriving" into the country and thus cannot be detained under § 1225(b).

The Court cannot square this argument with the plain language of the Parole Provision. The Parole Provision contemplates physically bringing aliens "into" the United States, and requires that once their parole expires, they are to be "returned" into the custody from which they were paroled. Petitioner's argument requires that when a parolee is paroled "into" the United States, they became "present" in the United States such that they could *never* be detained under § 1225(b). Under that reading, it is not clear under what circumstances the language of Parole Provision requiring a "return" to custody could ever be given effect.

The straightforward reading of the Parole Provision makes sense given the facts of this case. Petitioner presented at a port of entry and was subjected to a final removal order. Respondents were unable to remove him in a timely manner, so they paroled him into the United States under the Parole Provision for a period of a year. After that period lapsed, Respondents sought to return him to the custody from which he was paroled. There is no indication in the Parole Provision, § 1225(b), or § 1226(a) that Congress meant to afford parolees additional protections once they were paroled into the United States; rather, it is clear that parolees are *not* entitled to any

6

protections beyond those available for aliens arriving at ports of entry. 8 U.S.C. § 1182(d)(5)(A) (". . . parole of such alien shall not be regarded as an admission of the alien and . . . thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.").

Because Petitioner cannot demonstrate either that he is entitled to be released or entitled to a bond hearing, the petition for habeas corpus is denied.

### CONCLUSION

The petition for habeas corpus [1] is denied. Parties are to file a status report by June 30, 2026 indicating whether judgment should enter.

E N T E R:

Dated: June 15, 2026

_____
MARY M. ROWLAND
United States District Judge

7